JAMES G. THIGPEN *v.* THE MISSISSIPPI CENTRAL RAILROAD CO.

1. PLEADING.—The object of pleading is to ascertain the *truth* of the *material* facts in controversy between the parties; and if it judicially appear by the record that the matter pleaded is false, or if it be immaterial, the other party may have judgment as if that plea had not been filed.

2. SAME: TRIAL BY JURY.—The sole object of a trial by jury is to ascertain the material facts in a cause, the truth or falsity of which does not appear by the pleadings; and hence, neither material facts which are admitted by the pleadings, or appear from the record to have been falsely alleged, nor immaterial facts upon which the parties have come to an issue, should be submitted to a jury; but the court should render judgment according to the truth of the material facts as ascertained by the pleadings.

3. PLEADING: PROTESTANDO.—Every pleading is taken to confess such traversable

matter alleged on the other side, as it does not traverse, notwithstanding a *protestando,* the only effect of which is, to leave the party making it at liberty to traverse in another action the traversable matter alleged on the other side which he has not chosen to deny in the existing suit.

4. RAILROADS : ACTIONS BY: PLEADING.—In actions by railroad companies, under the Act of 1854, (Session Laws,) to recover instalments of their capital stock, from the subscribers, it is unnecessary for the plaintiff to prove that the defendant subscribed for the shares of stock, as alleged in the complaint, unless the defendant deny the subscription under oath ; and a plea denying the subscription, but not under oath, is a nullity, and no obstruction to the plaintiff's recovering.

5. RAILROADS : ACTIONS BY.—The Act of 1854, in relation to suits by railroad companies, for the recovery of instalments due by the subscribers to their capital stock, not only dispenses with proof of subscription by the defendant, but also dispenses with the production of the books of subscription on the trial, unless the defendant deny the subscription under oath.

6. SAME: SUBSCRIPTIONS FOR STOCK ON CONDITIONS INCONSISTENT WITH CHARTER, EFFECT OF : PAROL EVIDENCE.—A verbal promise made by the agent of a railroad company to a person subscribing for stock therein, and upon the faith of which he made the subscription, that payment of his stock should be delayed for a longer period than that prescribed by its charter, is not binding on the company. First : Because the written contract of subscription cannot be varied by a contemporaneous parol agreement, and Second : The promise being inconsistent with the charter, it is void for want of power in the corporation to make it.

7. SAME: SUBSCRIPTION: CONSIDERATION OF.—When a person subscribes, according to the charter, for stock in a railroad corporation, he thereby is admitted a member thereof, and becomes entitled to the franchises granted by the charter, which is a valuable consideration for his subscription ; a plea, therefore, to an action by the corporation to recover the amount so subscribed, that the subscription was made without a valuable consideration is bad, because it appears from the defendant's own showing that it is false.

8. CONSTITUTION.—The Act of 1854, (Session Laws, 94,) which dispenses with proof of the defendant's subscription in actions by railroad companies for the recovery of the amount due them from subscribers to their capital stock, is constitutional.

IN error from the Circuit Court of Madison county.   Hon. E. G. Henry, judge.

There is a very full statement of the facts in the opinion of the court.

*Lawson* and *Luckett,* for plaintiff in error.

*Davis* and *Hill,* for defendants in error.

Justices FISHER and HANDY being interested in this cause, the governor commissioned the Hon. W. L. Harris and Daniel Mayes, Esq., to hear and determine the same with the Chief Justice.

DANIEL MAYES, Esq., special judge, delivered the opinion of the court.

The object of this suit is to recover certain instalments on five shares of the capital stock of the company, alleged in the complaint to have been subscribed by the defendant "some time in the summer of 1854."

The defendant filed three pleas or answers.

1. "And now, at this time, comes the defendant and for plea and answer says, that he never subscribed for five shares of the capital stock of said Mississippi Central Railroad Company, or caused said number of shares to be subscribed for in his name, as alleged in said plaintiff's complaint, and of this he puts himself upon the country.

2. "And said defendant, for further plea and answer, says, that if he ever did subscribe for stock in the Mississippi Central Railroad Company to the amount of five shares, or to any other amount, it was with the express understanding that said amount of stock would not be required to be paid up, but in the following manner, to wit: one-third this year, one-third in 1856, and the other and last third, in 1857. Defendant avers, that contrary to this understanding, which he considered sacred and inviolate, the said Central Railroad Company are now demanding, and have sued him for a much larger amount than that agreed upon, and he says, that by such violation of the understanding on the part of the Mississippi Central Railroad Company, he has been released from any and every contract for stock into which he may have entered, and asks that the allegations of this plea may be inquired into by the country.

3. "And for further plea and answer, defendant says, that if he ever subscribed for any stock in the Mississippi Central Railroad Company, such subscription, being without any consideration, good or valuable in law, is void, and of this he puts himself upon the country."

Neither plea is verified by oath, and in this state of the case, a jury was sworn, and a verdict found, and judgment pronounced for the plaintiff.

A bill of exceptions is on the record, by which it appears that certain evidence was introduced, which having no relation to any point in the cause, is not noticed. John T. Cameron was introduced by plaintiff, who testified "that some time about the second day of July, 1854, he, witness, had induced defendant to subscribe for stock in the Mississippi Central Railroad Company, but had no recollection of how many shares defendant subscribed for; thinks he told defendant, at the time of subscribing, that he, defendant, would have three years within which to pay up for said stocks—for that was witness's understanding from gentlemen who were soliciting subscriptions for stock. Witness felt satisfied that he told the defendant so, from the fact that he, witness, had subscribed for stock in the Central Railroad, about the same time that defendant had subscribed to him, witness, and his understanding at the time was, that he would have three years within which to pay for his stock, or would not be required to pay more than 33⅓ per cent. per annum, upon it, and remained of this opinion until the visit to Canton of the agent of the road, and secretary of the board of directors, some time thereafter; and thinks this had its influence on defendant, and may have been the controlling motive, for all he knows." Then follows the evidence of Judge Henry, which has no reference to the case, and also certain admissions, which do not bear on any point in the pleadings or instructions given or refused, and here the evidence closed. On motion of the plaintiffs, the court instructed the jury.

1. That on the state of the pleadings it was not incumbent on the plaintiffs to prove that defendant subscribed the stock sued for.

2. That any unauthorized representations made by Cameron to the defendant, as to the time in which payment would be demanded, or calls made, would not be binding on the plaintiff, unless they should believe, from the evidence, that such representations were afterwards communicated to plaintiffs and adopted and ratified by them.

3. If they believe, from the evidence, that defendant subscribed,

and that no condition in writing was annexed to his subscription, then plaintiffs are not bound by the representations of Cameron, unless communicated to and ratified by plaintiffs, as a condition to his subscription.

The defendant then asked the court to instruct the jury, that " It is incumbent on the plaintiffs, in order to make out their case, to establish all the material allegations in their complaint to the satisfaction of the jury. If, therefore, the jury believe, from the evidence, that the plaintiffs have not proven to their satisfaction, that the defendant subscribed for five shares of capital stock in plaintiffs' company, as alleged in plaintiffs' complaint, and for the recovery of which this suit was instituted, the law is then for the defendant, and the jury will so find." This instruction was refused, but as a modification, the following was given : " If the jury believe, from the evidence, that defendant did not, at any time, subscribe for stock in plaintiffs' company, they will find for defendant, otherwise they will find for plaintiffs, unless they believe that the presumption in favor of defendants having subscribed for stock in plaintiffs' company has been rebutted by evidence satisfactory to them."

The defendant also asked, and the court refused, this instruction : " If the jury believe, from the evidence, that the defendant, at the time of his subscribing, was induced to do so by Mr. Cameron, and upon the representation by Cameron, who was soliciting the subscription, that not more than $33\frac{1}{3}$ per cent. of the amount subscribed for should be called for in any one year after the subscription made, then plaintiff can only recover so much as was due, according to said understanding, at the time of the commencement of this suit." To the giving and refusing the instructions, as before stated, the defendant excepted, and also to the overruling a motion for a new trial.

No reason for a new trial being assigned, no question arises in that respect. The defendant, on this state of the case, prosecutes his writ of error. If there be error *to his prejudice*, the judgment must be reversed. If there be no error, or if there be error and it is not to his prejudice, the judgment should be affirmed.

In jurisprudence, as frequently, if not more frequently than in

any other branch of human learning, a recurrence to first princi-
ples and *a priori* reasoning, is necessary to enable us safely to
proceed, amidst the "shadows, clouds, and darkness" in which we
often find ourselves involved, by looking too confidingly to ad-
judged cases.  Tested by principles clear and indubitable, the case
before us seems to present little, possibly nothing, of doubt or
difficulty.  We will bear in mind, that "in the course of adminis-
tering justice between litigant parties, there are two successive
objects: to ascertain the subject for decision, and to decide."
Stephens on Pleading, 1.  Necessarily the former precedes the
latter inquiry.  The subject for decision must be either a question
of law or a question of fact.  We ascertain whether it is the one
or the other by the pleadings, and also ascertain by them what
that contested matter of law or fact is.  The facts may be admit-
ted by the parties in the course of their respective pleadings, and
if so, it only remains to apply the law to the facts and pronounce
judgment for the plaintiff or defendant, as the law may be for the
one or the other.  But the pleadings may terminate by ascertain-
ing that every material fact is controverted, or that a part of them
are agreed, and a part only contested.  In this case we have a
trial by jury, to whose decision the material questions of fact are
referred.  But nothing is *properly* referred to the jury but a *ma-
terial controverted matter of fact*.  If matters not material be
referred the finding is of no effect; and to refer to a jury the de-
cision of facts not controverted, would be absurd and fruitless.
Law is a practical science, and all its rules and requirements, if
properly understood, are directed to *useful and practical* ends.
Process, pleading, and trial by jury, are all directed to a single
end.  There is no use in them, and no object in resorting to them,
but to obtain a knowledge of the *material facts* of the case.
These once ascertained, the court is to apply to them the law, and
declare what is its judgment upon them.  These are such simple,
obvious, elementary truths, that it appears almost ridiculous to
state them; but they are often overlooked, for the very reason that
they are so simple and palpable.  I will now proceed to inquire,
How stands the present case upon the pleadings alone ?  Did they
ascertain the facts in a legal and proper manner, so that the court

Thigpen v. Mississippi Central R. R. Co.

might rightfully have proceeded to judgment, without a trial by jury? It is believed they did. The petition set out every fact necessary to the plaintiff's recovery. This is not controverted.

The next inquiry is, What is the legal effect of the answers? Let them be examined in the order in which they stand. The first is a pleading by way of traverse; it only denies one allegation in the petition; that is, that the defendant "subscribed for five shares of the capital stock," &c. As far as the case depends on this answer, every fact alleged in the petition is admitted to be true, except the mere fact of subscription of five shares of stock; "it being a rule, that every pleading is taken to confess such traversable matters, alleged on the other side, as it does not traverse." Stephens, Pl. 255; Com. Dig. Pleader, G. 2; Bacon, Ab. Pleas and Pleading, 322, 386; *Hudson* v. *Jones*, 1 Salk. 91.

What, then, is the effect of this traverse in law? Has it any effect? By the second section of an Act approved March 1st, 1854, it is provided, "That whenever any suit shall be hereafter brought against any person or persons, his, her, or their legal representatives, by any railroad company to recover any calls upon the capital stock subscribed by such person or persons, it shall not be necessary for said company to prove such subscription to have been made, unless the defendant or defendants shall deny, by plea or answer, verified by affidavit, that he, she, or they, or his, her, or their testator or intestate, as the case may be, made such subscription, or caused or permitted the same to be made." In this provision, which, for the present, is assumed to be constitutional, there is nothing ambiguous, and consequently no room for construction. In respect to the present action and this plea, two inquiries present themselves to the lawyer's mind, 1st. What can be done? 2d. How can it be done? To the first the obvious answer is, You can put the plaintiff on proof of the alleged subscription of stock, and to the second, It can be done by plea or answer, verified by affidavit, and not otherwise; for the enumeration of one thing, is the exclusion of all others. Where an end is authorized, all means necessary and appropriate to that end are authorized, and it is equally obvious that where an end is prohibited, the means leading

VOL. III.—23

to it are prohibited; for means are idle and useless but as they conduce to ends. The end of the traverse is, to raise a question of fact, to be tried and decided by a jury on evidence. But the legislature have provided that "it shall not be necessary for said company to prove such subscription to have been made, unless the defendant or defendants shall deny by plea or answer verified by affidavit," &c. The defendant has not so denied: it follows that the plea raises *legitimately*, no question, and the only office of a plea being to raise a question, the plea has no effect. It could only have effect, if verified by oath. Such verification is a pre-requisite to filing it, unless the law is so unmeaning, as to give a right to file a plea without affidavit, which when filed raises no question for evidence or trial. But the plea was filed, and neither demurred to, nor in any wise disposed of, unless by the verdict: What then? If the defendant had no right to the trial, he was prejudiced by nothing that occurred on the trial. Had he a right to a trial on this traverse, or had the plaintiff a right to judgment? If a plea can only be filed on terms, and those terms are not complied with, as where to a plea in abatement there is no affidavit, or a tender is pleaded without bringing the money into court, the plaintiff may sign judgment as for want of a plea, or move the court to set it aside. 1 Tidd, Pr. 565, and authorities there cited. *Prewitt* v. *Bennett*, 7 S. & M. 101. Thus, this plea constituted no impediment in the way of the plaintiff, unless one of the two grounds taken by the counsel for the plaintiff in error, is tenable. The one is, that the statute only dispenses with proof of the mere act of subscribing, but not with proof of the number of shares subscribed. The number of shares subscribed, cannot be proved, without proving that shares were subscribed. The latter is included in the former. The statute as well in letter, as in meaning, embraces the number of shares subscribed.—"It shall not be necessary for said company to prove *such* subscription to have been made," &c. The word "such" refers to the preceding words, "the capital stock;" to recover calls on which the action was instituted. That capital stock was five shares of stock. The other position is, that although proof of the subscription is dispensed with, the production of the books of subscription is not, and the provision is

assimilated to that of the 2nd and 3rd sections of an Act of 1836, Hutch. Code, 852. The answer given at the bar to this position by Mr. Hill, is quite satisfactory. The Act of 1836 provides that the note sued on may be given in evidence, without proof of the signature, unless denied by oath. In *assumpsit* founded on a note, if *non-assumpsit* be pleaded, the note set forth must be given in evidence, but it could not be given in evidence unless its execution was first proved. It was therefore necessary that a plaintiff be ready with witnesses to prove the execution. This proof, in a vast majority of cases, was required by plea, not because a real contro- versy existed as to the execution of the note, but to embarrass and delay the plaintiff in the pursuit of his remedy. To remedy this evil, the statute merely dispensed with the necessity of proving the execution of the note unless denied under oath; still requiring that it be produced and read in evidence. In substance, the provision is, that the contract may be proved by producing and reading the note, without proof of its execution, unless the latter be denied by plea on oath. The Act of 1854 does not provide that the subscription may be proved by production of the books, unless, &c., but that it shall not be necessary to prove it at all, unless, &c. Having thus disposed of the first; the second answer or plea will be attended to. This is a plea in confession and avoidance. For all the purposes of this action all the allegations of fact in the plaintiff's complaint are admitted. It is true, the plea commences, as is now very common in our courts, with the words "if he ever did subscribe for stock," &c. Why, this mode of pleading in confession and avoidance I have never understood, unless it is intended as an informal *protestando*—it has that effect or none. Be that as it may, it avails nothing in this case, the only effect of a protestation being to leave the party making it at liberty to traverse, in another action, the traversable matter in the preceding pleading, which he has not chosen to deny in the existing suit; in which every traversable fact, not traversed, is, notwithstanding the protestation, to be taken as admitted. Stephens on Pleading, 255, 258. The facts of the complaint being here admitted to be true, as therein stated, the inquiry is, do the matters set up in avoidance constitute a bar to the action? That they do not, is too apparent to admit of ques-

tion. With whom had the defendant the express understanding spoken of? We are not told. Was it with the corporation, or an agent of the corporation? It does not so appear. Was it a part of the contract for stock? It is not stated to have been so. Could the corporation make a contract that the stock should only be payable in annual instalments of 33⅓ per cent.? Such contract would be inconsistent with the charter, and void, for want of power to make it. By becoming a subscriber the defendant contracted to pay, at such times and in such sums as might be appointed and required, according to the provisions of the charter. If he had an understanding that his contract would not be enforced until a certain time, variant from that fixed by the contract itself, it cannot be pretended that an attempt to enforce a contract, according to its terms and legal effect, is a release or discharge from that contract, because the party who entered into it understood that time would be allowed him, within which to perform, beyond that within which he contracted to perform; and yet that is the legal hypothesis upon which this defence rests. Had the contract been as the understanding of the plaintiff is alleged to have been, the result would not be that the action is barred because prematurely brought, to recover part of the sum sued for. Yet the plea is offered in answer to the whole demand, on the assumption, that if a plaintiff sue for more than is due at the time of bringing suit, the whole legal duty is at an end.

This plea then was bad on demurrer. But instead of a demurrer it was submitted to a jury. Had they found a verdict ascertaining every fact to be true, the plaintiff should have had his judgment as by confession *non obstante veredicto,* in so far as the rights of the parties depended on this plea. For " if the plea was itself substantially bad in law, of course the verdict, which merely shows it to be true in point of fact, cannot avail to entitle the defendant to judgment; while, on the other hand, the plea being in confession and avoidance, involves a confession of the plaintiff's declaration, and shows that he was entitled to maintain his action. In such case, therefore, the court will give judgment for the plaintiff, *without regard to the verdict;* and this, for the reason above explained is also called a judgment *as upon confession.*" Steph.

on Pl. 129, and the numerous authorities referred to by him.   On this plea, therefore, the plaintiff should have judgment, whether demurred to or found for the defendant.

The third and last plea next claims attention.   This plea also is in confession and avoidance, and the matter set up as a bar is, that "such act of subscription being without any consideration, good or valuable in law, is void."   This plea like the second, is bad on demurrer, being false on its face.   It admits that he subscribed for five shares of stock.   By this he became entitled to the franchises granted by the charter, subject to the conditions therein expressed, which is a valuable consideration.   Were it not so, no subscription of stock, imposes any legal obligation on him who subscribes.   "It has been quaintly said, ' Truth is the goodness and virtue of pleading, as certainty is the grace and beauty of it;' and if it appear judicially to the court, on the defendant's own showing, that he hath pleaded a false plea, this is a good cause of demurrer."   1 Chitty, 462; Hob. 295; Bac. Ab. tit. Pleas, G. 4; 1 Campb. 176; 2 Wils. 394.   But as the whole object of pleading, is, to ascertain facts, either by the admission of the parties, or the verdict of a jury, if it appear judicially to the court by the record that the matter pleaded is false in fact, there is no need for a jury, for the only object of empaneling a jury to try an issue is to ascertain the truth or falsehood of the facts alleged; and the record showing them to be false, to empanel a jury to ascertain that which already judicially appears, would be idle and absurd.   As well might it be required to have a jury to inquire whether facts exist which are admitted to exist, as to inquire whether things are true which are judicially known to be false.   Therefore, in all such cases, the plaintiff may disregard the plea which asserts that which the record shows to be false, and take his judgment as for want of a plea, or strike it out as a nullity, and take his judgment by default, *nil dicit*, or *non sum informatus*, as the case may require.   1 Tidd, 272, 564.   All pleas which are untrue are sham pleas, and, where it does not appear on the face of the record that they are false, if they are probably sham, and the plaintiff will make oath that they are false, the practice in England was to treat them as nullities.   If so, for a stronger reason may they, indeed must they, be so regarded if manifestly

untrue, as in the present case.    But further, the matter of this plea is not proper for the decision of a jury; it must be decided by the court; it presents no question but of law.    The fact of subscription admitted, the questions are, what rights did the defendant acquire by that act, and were such rights, if any were acquired, a sufficient consideration, and if not, whether by the act incorporating the company any consideration was necessary to bind the subscriber.    In these, no question of fact being presented, they are of necessity to be decided by the court.

If this be true, we have reached the conclusion that on the face of the pleading the plaintiff was entitled to his judgment without a trial, if the act of 1854 is constitutional.

It is contended that it is unconstitutional on two grounds.    1st. That it violates that provision in the bill of rights in which it is declared, "That all freemen, when they form a social compact, are equal in rights; and that no man, or set of men, are entitled to exclusive, separate public emoluments, or privileges from the community, but in consideration of public services."    2d. That it violates that, which declares, "The right of trial by jury shall remain inviolate."

These questions seem to admit of no argument, and indeed the able counsel who raised, did not venture his merited reputation by a serious effort to sustain them.    There is nothing in the statute which creates an inequality of rights civil or political; it confers no privilege, and has no relation to emoluments.    It simply provides that if a railroad company sue for instalments of stock, it shall not be necessary for said company to prove such subscription to have been made, unless the defendant shall deny the subscription by plea or answer, verified by affidavit.    It is only necessary to read the provision to perceive that the first section of the bill of rights, has no relation to it.    The remarks of Mr. Justice Handy, in *Williams* v. *Cammack*, 27 Miss. R. (5 Cushm.) 219, are applicable to this point.

Nor is it an invasion of the trial by jury.    It only provides that before a trial by jury shall be necessary, the defendant shall make an affidavit that he did not subscribe.    It leaves the trial and the right to the trial entirely open and accessible, prescribing only

a condition, the object of which is to prevent the evil of pleas, known by the party pleading to be false, and interposed to delay and embarrass the administration of justice. It is of the class of statutes requiring affidavits to pleas in abatement, of *non est factum*, affidavits of merits &c. after a demurrer overruled, and many others. Such statutes exist in every State in the United States, as far as we are informed, and have been uniformly held to be no invasion of the trial by jury, in the very few instances in which the question has been raised. I only refer to *Biddle* v. *The Commonwealth*, 13 Serg. & Rawle, 410.

The proceedings on the trial it is needless to notice, for if there was error it will be perceived from the foregoing reasoning, it could not be to the prejudice of the plaintiff in error, against whom a judgment might have been properly entered on the state of the pleadings without trial. Were we to reverse, it would be our duty, under the 7th section of the Act of 1822, Hutch. Code, 927, to proceed to enter "such judgment as the court below should have entered," and that would be precisely the same judgment which the court below did enter, with the mere formal difference, that we would assign as the reason of ours, the confessions in the pleading; the court below having based its judgment on the verdict. The judgment being right, it is no good reason for reversal, that it does not purport to be on confession. It is therefore affirmed with damages and costs, to be entered against the plaintiff and sureties, in the writ of error bond.