PETER BAILE *vs.* THE CALVERT COLLEGE EDUCA-
TIONAL SOCIETY OF CARROLL COUNTY.

## CORPORATIONS.

*Subscriptions—Parol agreements repugnant to written instru-*
*ments—Liability of subscribers to capital stock—Assess-*
*ments—Powers of corporations to enter into agreements con-*
*cerning the payment of subscriptions—Evidence—Act of*
*1868, ch. 471.*

B. subscribed for a number of shares of capital stock in a corporation formed
under the General Corporation Law of Maryland, agreeing in writing at
the time of his subscription to pay for the same at such times and in such
installments as might be fixed upon by the trustees. There was, however,
an understanding between the parties that such subscriptions need not be
paid for in money, but that land would be accepted in payment thereof. In
an action instituted against B. by the corporation to compel *payment in
money* of his assessment on the amount subscribed by him, he offered parol
evidence of the said understanding concerning the payment of subscriptions
in land. HELD :

1st. That it was not in the power of the corporation to make an agreement
with B. in regard to the payment of his subscription in plain violation
of sec. 56, Act of 1868, ch. 471, under which the corporation was created.

2nd. That the evidence offered to prove such agreement was not only incon-
sistent with the written terms of the subscription paper, but the offer thereof
was an attempt on the part of the defendant to set up a contract expressly
forbidden by the law under which the corporation was chartered.

It would seem that after the certificate of incorporation has been recorded,
and the company organized and liabilities incurred, that defects in the cer-
tificate of incorporation cannot be set up as a defence by a subscriber, in an
action against him by the company, to compel payment by him of an assess-
ment on his shares of stock.

Where the amount of the capital stock and the number of shares thereof are
fixed in the articles of incorporation, it is necessary that the whole capital
stock should be subscribed before an assessment can be made.

Yet when the subscription list shows upon its face that the capital stock of a corporation has been taken, and when the subscriptions have been accepted by the company as *bona fide*, and upon the faith of them property is acquired and liabilities incurred, though it should afterwards appear that some of the subscriptions were made improperly and without authority, it would seem that such facts cannot be relied upon by a shareholder, as a defence to an action by the corporation against him to recover an assessment on the shares of stock held by him.

In the absence of proof to the contrary, where it appears from the minutes of a corporation that a meeting of trustees was held and business transacted, the presumption will be that a quorum was present.

Appeal from the Circuit Court for Carroll County.

The "Calvert College Educational Society of Carroll County" was incorporated under the general law for the formation of corporations, and after the required amount of capital stock had been taken, it purchased land and incurred obligations upon the faith of the subscriptions made. Among the subscribers to the capital stock was a certain Peter Baile, who with the others signed the following agreement :

"The undersigned do hereby agree to take and subscribe for the several shares of stock in the corporation called 'The Calvert College Educational Society of Carroll County,' set opposite our respective names, at the rate or price of ten dollars per share, and to pay for the same in such installments and at such times as may be fixed and required by the trustees."

Subsequently an assessment of $36\frac{7}{10}$ per cent. of the amount of capital stock subscribed was levied upon each of the subscribers by the trustees, notice thereof was given to Baile and personal demand made on him for the payment thereof. On his refusal to pay, suit was instituted against him. At the trial he offered to prove that a certain A. H. Baker was the owner of property known as the "*Calvert College*," and being embarrassed he executed a deed of trust of said property to be sold for

the benefit of his creditors ; that the creditors, of whom the defendant was one, agreed to form a company for the purpose of buying the property, and that it was understood that each creditor should take stock in said company to an amount equal to Baker's indebtedness to such creditor ; that the defendant's subscription was made in pursuance of this agreement and with the full understanding with the plaintiff that no money was to be paid by the defendant on account of his subscription. But the Court ruled that such evidence was not admissible. Fifty exceptions were reserved by the defendants, forty-nine with reference to the evidence and one with reference to the prayers. Many of the exceptions taken were to the rulings of the Court in excluding evidence wholly irrelevant to the matters in issue, and in regard to the agreement concerning the subscription sought to be given in evidence by Baile two questions arose.

1st. Whether it was competent to prove by parol an agreement repugnant to the writing signed by Baile ; and

2nd. Whether the corporation had the power to enter into any such agreement.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, ALVEY and ROBINSON.

*William P. Maulsby*, for appellant.

*Charles B. Roberts*, for appellee.

ROBINSON, J., delivered the opinion of the Court.

This is a suit to recover of the appellant *an assessment or call* upon his subscription to the capital stock of the appellee.

The following is the written agreement signed by the appellant :

" The undersigned do hereby agree to take and subscribe for the several shares of stock in the corporation

120          MARYLAND REPORTS.

Baile *vs.* Calvert Coll. Educa'l Soc. of Carroll Co.

called the Calvert College Educational Society of Carroll County, set opposite our respective names, at the rate or price of ten dollars per share, and to pay for the same in such installments and at such times as may be fixed and required by the trustees."

The company was organized, purchased property and incurred debts, and now in a suit against the appellant to recover an assessment upon his subscription he offers to prove that a certain A. H. Baker was the owner of property known as "*the Calvert College*," and being embarrassed, he executed a deed of trust of said property to be sold for the benefit of his creditors; that the creditors of whom the defendant was one, agreed to form a company for the purpose of buying the property, and it was understood that each creditor should take stock in said company to an amount equal to Baker's indebtedness to such creditor, that the defendant's subscription was made in pursuance of this agreement, and with the full understanding with the appellee, that no money was to be paid by the appellant on account of his subscription. The general question whether it was competent for a subscriber to prove a parol agreement between him and the corporation or its officers, inconsistent with the written terms of the subscription itself, is a question not necessary to be decided in this case.

The 56th section of the General Corporation Law of this State, under which the appellee was incorporated, provides that,

"Subscriptions to the capital stock of such of said corporations as have capital stock, may be made in land or other property at a valuation agreed upon between the corporation and the subscriber, where the said property so subscribed shall be such as it *is proper that the said corporation shall own for the advancement of the purposes for which it was incorporated,* but such subscriptions shall *not be otherwise received,* nor shall they be so received, unless

the same shall have been previously *authorized by the stockholders assembled in* general meeting, pursuant to a call to consider the propriety of receiving the said subscription, and of fixing the terms upon which it shall be received."

57th section provides,

" Where property of any kind is received by the authority of the stockholders in general meeting as aforesaid in payment of stock, the books of the company shall be so kept as to show at all times fully what property was received for the said stock, at what value and the number of shares of the capital stock issued for the same ; *in all other cases money only shall be considered as payment of a subscription to any part of the capital stock."*

The law then under which the appellee was chartered, declares in plain and unambiguous terms, that all the *subscriptions to its capital stock must be paid in money ;* or *in land* or *other property,* such as it is *proper that the said corporation should own for the advancement of the purposes for which it was incorporated.* The appellee was chartered as a college for educational purposes, and the evidence offered by the appellant is liable to two objections. First, it did not prove that his subscription was payable in land or other property necessary to or even incident to the successful prosecution of the business for which the appellee was chartered ; and secondly, having this objection, there was no offer to prove that such subscription had been assented to by the stockholders in a general meeting called for that purpose.

It was not in the power of the appellee to make an agreement with the appellant, in regard to his subscription in plain violation of its charter. The evidence thus offered, was not only inconsistent with the written terms of the agreement itself, but it was an attempt on the part of the appellant to set up a contract expressly forbidden by the law under which the company was chartered, the provisions

of which were known to him at the time.   There is no
error therefore in the rulings of the Court in the seventh,
eighth, thirteenth, fourteenth, seventeenth, twentieth,
twenty-fourth, thirty-third, thirty-eighth, fortieth, forty-
first, forty-second, forty-third and forty-fourth exceptions.

But objection is also made to the articles of incorpora-
tion, on the ground that the objects and purposes of the
company are not sufficiently set forth in the recorded cer-
tificate.   It states that the name of the corporation shall
be " *The Calvert College Educational Society*, of Calvert
County," and that its object was to erect and maintain an
educational society—in other words, to build and main-
tain a college for *educational purposes*—and this we think is
a sufficient compliance with the law.   In considering this
objection, however, we are not to be understood as admit-
ting, that after the certificate has been recorded, and the
company organized, and liabilities incurred, the defendant
as a subscriber, could set up such an objection by way of
defence in this suit.

Objection is also made to the subscription lists offered
in evidence by the appellee, for the purpose of proving
that its entire capital stock had been taken.   To Nos. 1
and 2, because the subscriptions in the name of Ecker &
Co., for 103 shares, and in the names of Jacobs and Lam-
pert, and Jacobs and Yingling, were made by members of
the firm, after their dissolution : to No. 3, because the sub-
scription in the name of Ecker, executor of Ecker, was
not binding on the estate of the testator, and to No.
4, because the subscriptions in the name of Jesse F. Lam-
pert, Joseph G. Baker and Daniel Baker & Son, were
made by Joseph A. Stouffer, without the authority of said
parties—the subscription of Ecker & Co., for 84 shares,
we have not considered, because the appellee admits it
was made by mistake, and was not relied on at the trial
below.   These subscriptions were accepted by the appellee
in good faith, and relying upon them, the company was
organized, and even conceding that they are not binding

upon the several firms, if made subsequent to their dissolution, yet it is quite clear that the parties subscribing would be personally liable to the appellee, and the same may be said in reply to the objection to the subscription of Ecker, executor.

In respect to list No. 4, Stouffer having testified that he subscribed for the shares of stock *as the agent* and by *the authority* of the parties, the paper was clearly admissible, the denial on the part of the subscribers might affect the question of agency *vel non*, but could not exclude the evidence offered to prove the subscriptions, and also that they were made by authority.

And here it may be proper to say, that although in companies of this kind, where the amount of the capital stock and number of shares are fixed in the articles of incorporation, it is necessary that the whole capital stock should be subscribed before an assessment could be made, yet when the subscription lists show upon their face that the capital stock has been taken, and they are accepted by the company as *bona fide subscriptions,* and upon the faith of them property is purchased, we are not to be understood as admitting, that if it should appear subsequently that some of the subscriptions were made by parties professing to act as agent, but in fact without authority, that this would under the circumstances of this case be relied on as a defence to the action.

This question, however, it is unnecessary to decide, because excluding the 440 shares in the names of Joseph G. Baker and Daniel Baker & Son, and the 79 shares in the name of Jesse T. Lampert, and the 84 shares in name of Ecker & Co., the subscriptions show that 2508 shares were taken, being eight more than required by the charter.

But appellant also contends that the evidence offered to prove the assessment was inadmissible, just because the trustees were not legally elected, and secondly, because

the minutes do not show that a quorum was present when
it was levied.   At the time of election of the trustees, no
call had been made upon any of the subscribers for the
payment of their subscriptions, and in the absence of a
provision in the charter or by-laws to the contrary, we are
of opinion that each subscriber had the right to participate
in the organization of the company ; and in the election
of the trustees was entitled to as many votes as he had
subscribed shares of stock.   This view is strengthened by
the 53rd section of the general corporation law which pro-
vides :

"Each stockholder shall be entitled to as many votes
as he owns shares of stock," * * * * "but no share of
stock shall be voted by any stockholder unless all instal-
ments have been paid thereon which may have been
called for on any part of the stock of such corporation."
In regard to the objection to the minutes we take the law
to be, that where as in this case the by-laws provide that
a quorum of trustees shall be necessary in order to transact
business, and it appears from the minutes that a meeting
was held and the business of the company transacted, the
presumption is in the absence of evidence to the contrary
that a quorum was present.   The objection therefore on
the part of the appellant to evidence offered in this respect
were properly overruled.

The evidence offered to prove demand and notice was
admissible, and all we think the law required.   It shows
that the president of the board of trustees called upon the
appellant and made a demand in person, and stated at
the time that he did so at the request and by the author-
ity of the trustees, and to which the appellant replied " he
never would pay a cent unless compelled."   It is true
the resolution making the assessment did not fix upon a
named day for its payment, and it was therefore optional
with the appellant either to pay at the time the demand
was made, or within ninety days thereafter.

We deem it unnecessary to examine in details all the exceptions to be found in this record, being no less than fifty in number, many of which are unnecessary repetitions of the same question, and others in regard to the admissibilty of evidence that had nothing whatever to do with the case. Whether demand and notice had been given to other subscribers? Whether they had paid anything on their assessments? Whether accurate accounts had been kept of all the moneys received? What the witness Hibbard said about the appellant's subscription? What time the appellant sold part of his property to Shryrock—the proceedings under which Baker's property was sold—all these matters were wholly irrelevant and therefore properly excluded.

We come now to the law of the case, and this we think was fairly presented to the jury by the instructions offered by the appellee, and granted by the Court.

If the defendant subscribed for five hundred shares of the capital stock of the plaintiff, and agreed to pay for the same in such installments and at such time as the trustees might require, and the whole capital stock was subscribed, and subsequent thereto an assessment was made by the trustees upon the defendant's subscription, notice of which was given and a personal demand made upon him for its payment *ninety* days before the institution of the suit, the plaintiff was entitled to recover, and so the Court instructed the jury.

The defendant has no right to complain of the refusal to grant the several prayers offered by him. The eighth, ninth and sixteenth prayers gave him the benefit of all the law to which he was entitled, and perhaps a little more.

Finding no error in the rulings below, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 15th of June, 1877.)