THEODORE OLLESHEIMER *et al.*, Respondents, v. THE THOMPSON MANUFACTURING COMPANY ; JAMES ABBOTT, Stockholder, Appellant.

St. Louis Court of Appeals, February 24, 1891.

1. **Corporation :** PROCEEDING AGAINST STOCKHOLDER BY MOTION NOT AN INDEPENDENT ACTION.  A proceeding by motion under the statute against a stockholder of a corporation is not an independent action ; it is a proceeding in the case, in which the judgment against the corporation was recovered, in such a sense as enables the court to take in it judicial notice of the judgment.

2. —— : —— : PRACTICE, APPELLATE.  On the appeal of such a proceeding, the appellate court can review findings of fact as freely as in a case in equity.

3. —— : CAPITAL STOCK : RELEASE OF SHAREHOLDER'S LIABILITY. Where a contract of subscription for capital stock of a corporation is absolute on its face, no extrinsic or collateral agreements between the subscriber and the promoters or agents of the corporation, who obtained the subscription, not amounting to fraudulent representations on the part of the latter, can be shown for the purpose of discharging or reducing the liability of the former as a stockholder.

4. —— : —— : LIABILITY OF SUBSCRIBER FOR SHARES OF CAPITAL STOCK.  One who has subscribed for shares of the capital stock of a corporation is liable on the subscription in either of the following cases, namely, when the subscription was made in his own name individually, but upon a secret trust for another ; or when the subscription is made as trustee for a corporation which has no power to subscribe for such shares.

5. —— : —— : CANCELLATION OF SUBSCRIPTION FOR SHARES.  The liability of a subscriber for such shares cannot be discharged for the mere cancellation of the subscription, which is unaccompanied by a reissue of the shares subscribed for, and, therefore, diminishes the trust fund afforded by the capital stock of the corporation.

*Appeal from the Greene Circuit Court.*

AFFIRMED.

*Thrasher, White & McCammon,* for appellant.

*S. F. Heffernan, James R. Vaughan* and. *C. V. Buckley,* for respondents.

THOMPSON, J.—This was a proceeding for execution against a stockholder under the provisions of Revised Statutes, 1879, section 736. R. S. 1889, sec. 2517. There were three defenses set up by an amended answer. The first was a general denial. The other two were as follows :

"For another and further defense this defendant says that he subscribed about the —— day of May, 1888, for one hundred (100) shares of stock in the Thompson Manufacturing Company, which subscription was made, not for himself but for the Scott Investment Company, a corporation ; and that said Scott Investment Company was the real party in interest, and subscriber for said one hundred (100) shares of stock ; and this defendant subscribed for, and held the same in trust for, said Scott Investment Company.

"That said stock was subscribed for by the said Scott Investment Company by virtue of a contract in writing for the purchase of the certain lot and building known as the Old Cotton Mill building, by the terms of which contract the said Thompson Manufacturing Company was to pay for said building and lot by issuing to said Scott Investment Company, or to its trustee, the defendant herein, or to anyone whom said Scott Investment Company should name, one hundred (100) shares of paid stock in said company of the par value of fifty dollars ($50) each, and paying to said Scott Investment Company the sum of five thousand dollars ($5,000) in cash.

"That, by the terms of said contract between the said Scott Investment Company and said defendant and said Thompson Manufacturing Company, the said stock was to be fully paid for by the conveyance of said land, but that the said Thompson Manufacturing Company refused to fulfill and perform all the terms, conditions and agreements in said contract contained or any one of them, and never did at any time complete and carry out its said contract, or any part thereof, and the said subscription was by the consent of all parties canceled and annulled, and before the company became indebted in any amount whatever.

"That, afterwards and long before any indebtedness of the said corporation accrued, by a contract and agreement made between the Thompson Manufacturing Company and the said Scott Investment Company, other and different solvent subscribers were substituted for the Scott Investment Company, and for the defendant as trustee thereof, for the amount of said five thousand dollars ( $5,000 ), subscribed as aforesaid, and certificates for said stock were issued to said subscribers as aforesaid.

"And the said subscribers substituted as aforesaid for said Scott Investment Company, and to whom the said stock was issued, have been at all times recognized by the said Thompson Manufacturing Company as its stockholders in lieu of this defendant and the said Scott Investment Company ; and this defendant has never been recognized by the said Thompson Manufacturing Company as a stockholder therein."

Analyzing these two defenses, they appear to be as follows :    That the only shares of stock of the defendant company subscribed for by the stockholder, who is the defendant in the motion, were subscribed for by him in pursuance of a contract beween *another corporation*, the Scott Investment Company, and the defendant corporation, by which the Scott Investment Company were to convey to the defendant corporation certain real

estate in consideration of $20,000, of which $5,000 were to be paid in shares in the defendant company ; and that the defending stockholder subscribed for these shares, not for himself, but *as a trustee* for the Scott Invest- ment Company. *Second.* That afterwards, and before any indebtedness of the defendant corporation accrued, by a contract between the defendant corporation and the Scott Investment Company, other solvent subscribers were substituted in the place of the subscription thus made by the defending stockholder for the Scott Invest- ment Company, and certificates were issued to such subscribers.

I.   At the trial of the issues thus framed the plaintiff put in evidence the execution against the corporation with the return of *nulla bona* thereon.   The defendant objected to this on the ground that it was incompetent and irrelevant, and that no judgment had been shown to authorize the execution. This was idle. The proceed- ing for execution against a stockholder is not an inde- pendent suit in such a sense that the court hearing the motion cannot notice judicially the judgment from which the execution issues.   On the contrary, it is a proceeding in the case, in which the judgment against the corporation was rendered in such a sense as enables the court to notice its own judgment without the for- mality of its being offered in evidence.   The objection was not made on the ground, that there was a *variance* between the execution and the judgment ; and if such had been the objection, it would be incumbent on the appellant, in order to sustain it, to bring the judgment entry here as a part of his abstract.

II.   The plaintiffs then introduced in evidence the articles of association of the defendant corporation. From these it appeared that the capital stock was to be $50,000, one-half of which was to be paid up, divided into shares of $50 each.  Of these, seven hundred shares were subscribed by persons residing in Minneapolis, Minnesota, and the other three hundred were subscribed

by persons residing at Springfield, Missouri, to-wit. James Abbott, the defending stockholder, one hundred shares ; F. E. Atwood, one hundred shares ; and E. G. H. Kirst, one hundred shares. The purpose of the incorporation was stated to be to manufacture children's carriages, willow ware, etc., and also to sell any kind of merchandise at wholesale or retail. These articles were filed in the office of the recorder of deeds of Greene county on the seventeenth day of May, 1888. Two days later, on the nineteenth day of May, the secretary of state issued to the company a certificate of incorporation, which the plaintiffs also put in evidence. The plaintiffs also proved by the defending stockholder that his signature to the articles was genuine, and that he had never paid his subscription, or any part of it, either in money or in property, unless the matter set up in his special defenses constitutes such payment. The plaintiff then rested.

The defending stockholder introduced a mass of evidence in support of the two special defenses set up in his amended answer, as already quoted. Seasonable and appropriate objections were made to this evidence when offered, and at the close of the hearing the court, on motion of the plaintiff, struck it all out, and then made an order awarding execution against the defendant stockholder in accordance with the motion and the statute. In reviewing, on appeal, a proceeding by a motion against a stockholder for execution, where, as in this case, we have all the evidence before us which was heard in the trial court, we are possessed of the case for the purpose of dealing with the facts as fully as we should be in a case in equity. If, therefore, we can see, irrespective of any rulings which the trial court may have made, that the judgment is for the right party, we must affirm it. *Coquard v. Prendergast*, 35 Mo. App. 237, 241. If, then, after reading the defensive evidence which the court struck out, we are of opinion, looking at it as a chancellor would, that the trial court

Ollesheimer v. The Thompson Mfg. Co.

ought not to have held it sufficient to exonerate the defending stockholder, we must affirm the judgment; or if, taking the lower standpoint of reviewing the facts as though it were a case at law, we find that, giving full effect to all that such evidence tends to prove, it is not sufficient *in law* to exonerate the defending stockholder, our judgment must be the same.

Let us, then, first consider the evidence in support of the first of the special defenses. It tended to show, and, viewing it as chancellors, we ought to add that it *did* show, that, prior to the organization of the defendant corporation, and in contemplation of its organization, two persons, describing themselves as "agents of the Scott Investment Company," entered into the following written contract with the promoters of the defendant corporation:

"This agreement, made and entered into this eighteenth day of May, A. D. 1888, by and between T. A. Scott and F. E. Atwood, agents for the Scott Investment Company, parties of the first part, and W. H. Thompson, J. H. Pomeroy and E. G. H. Kirst, parties of the second part:

"Witnesseth that, in consideration of the agreements, made and to be kept and performed by the parties of the second part or assigns, the following described property, to-wit: Commencing at the northeast corner of the tract of ground known as the Cotton Mill lot, as shown on the map of the city of Springfield, Missouri, and extending westward along the line of the right of way of the Kansas City, Ft. Scott and Memphis railway, two hundred and fifty feet, thence north to a point directly west of the north line of the main factory building (Cotton Mill), thence east to the east line of the said lot, thence south to the point of the beginning of said property, known as part of the Cotton Mill property, located in the city of Springfield, in the county of Greene, and the state of Missouri.

"In consideration of the foregoing described premises, the parties of the second part, W. H. Thompson, J. H. Pomeroy and E. G. H. Kirst, agree to pay to the parties of the first part or their assigns, as and for the purchase price of said property, twenty thousand dollars ($20,000) in the manner and at the time stated herein below:

"Five thousand dollars ($5,000) in paid-up stock in the Thompson Manufacturing Company, and one thousand dollars ($1,000) cash in hand paid, receipt whereof is hereby acknowledged by the parties of the first part, and the further sum of one thousand dollars ($1,000) payable on or before twenty days after date, and the further sum of three thousand dollars ($3,000) payable on or before sixty days after date, with interest on each amount at the rate of eight (8) per cent. per annum from the date of contract until paid.

"Upon receipt of the cash payments, aggregating five thousand dollars ($5,000), by the parties of the first part from the parties of the second part, together with a certificate of stock in the Thompson Manufacturing Company, in the amount of five thousand dollars ($5,000) full paid, the parties of the first part agree to execute to the parties of the second part, or their assigns, a good and sufficient warranty deed of the above described property, and, upon receipt of the said deed by the parties of the second part from the parties of the first part, the parties of the second part agree to execute to the parties of the first part or their assigns a deed of trust in the amount of ten thousand dollars ($10,000), the same to be given to secure two (2) promissory notes of five thousand dollars ($5,000) each, executed by the parties of the second part to the parties of the first part or their assigns, the said notes bearing even date with the said deed of trust, and made payable on or before two years after date, with interest at the rate of eight (8) per cent. per annum, interest payable semi-annually

at the office of the Scott Investment Company in the city of Springfield, Mo.

"In witness whereof the parties to these presents have this eighteenth day of May, A. D. 1888, set their hands and seals.

"Witnesses:                T. A. SCOTT,
                          "F. E. ATWOOD,
              "Agents for Scott Investment Co.
                          "W. H. THOMPSON,
                          "J. H. POMEROY,
                          "E. G. H. KIRST."

This contract, though quite informal in ' respect of the manner of its execution, is to be regarded as the contract of the Scott Investment Company with the promoters of the defendant corporation, entered into on the part of the Scott Investment Company, in pursuance of a resolution of the board of directors of the Scott Investment Company, of which the following is the corporate record:

"SPRINGFIELD, Mo., May 18, 1888.

"Pursuant to a call of the president, the following named directors of the Scott Investment Company met at the office of J. J. Hibler, May 18, 1888, at three o'clock P. M.:

"Present, James Abbott, J. J. Hibler, Seth Tuttle, W. A. Knott, H. T. Rand, F. E. Atwood, the same constituting a quorum. Meeting was called to order by president, when J. H. Pomeroy and W. H. Thompson, representing the Thompson Manufacturing Company, being present, offered to buy the Cotton Mill building with two hundred and fifty feet fronting on Mill street, and running back to the north line of main building, and to pay for the same $20,000, as follows : $5,000 of full paid stock in said Manufacturing Company ; $5,000 and $10,000 in two (2) years with eight-per-cent. interest. On motion F. E. Atwood was instructed to accept said offer, and the president and secretary were authorized

to consummate the sale, and James Abbott and F. E. Atwood were authorized to sign articles of association of said company for the $5,000 of stock referred to above, and $5,000 of stock to be filled from subscription taken in the city. There being no further business meeting was adjourned."

The evidence adduced by the defending stockholder also tended to show that, in pursuance of this arrangement, he made in his own name the subscription of $5,000 to the stock of the defendant corporation by signing the articles of association; that he did not sign the name of the Scott Investment Company to the subscription, for the reason that the defendant corporation declined to receive the subscription, signed in that way, being advised that one corporation could not be a subscriber to the stock of another; that he was then the president of the Scott Investment Company; that F. E. Atwood, who was secretary of the Scott Investment Company, subscribed $5,000 to the stock of the defendant company in like manner, under a like arrangement, and for like reasons; that thereafter he and other agents of the Scott Investment Company canvassed the city of Springfield, and obtained subscriptions to the stock of the defendant corporation to the amount of between $7,000 and $8,000, in addition to the $10,000 thus subscribed by him and Atwood for the Scott Investment Company; that the defendant corporation, as soon as organized, took possession of the real estate which the Scott Investment Company had agreed to convey to it, and held possession of it for one or two months, when it abandoned the possession on account of being unable to comply with its contract of purchase. The evidence of the defending stockholder also tended to show an oral agreement or understanding between himself and the officers of the defendant corporation, that his stock had been canceled by the solvent subscriptions, which had been thus obtained by agents of the Scott Investment Company in canvassing the city.

But there was no evidence from the records of the defendant corporation, or otherwise, of any corporate action on the part of that corporation by which such substitution was made or attempted.

This evidence, as a matter of law, disclosed no defense on the part of the defending stockholder. Nothing is more firmly settled in the law in this state and elsewhere, than that a person, who with others subscribes tɔ the stock of a corporation, must perform his contract according to its form and substance by paying for his shares the full value stated in the contract of subscription, either in money or in money's worth. *Schaeffer v. Ins. Co.*, 46 Mo. 248; *Haskell v. Sells*, 14 Mo. App. 91; *Joy v. Manion*, 28 Mo. App. 55; *Wether-bee v. Baker*, 35 N. J. Eq. 501. The contract inures to the benefit of the corporation as soon as it is formed, and the latter can enforce it against the subscriber according to its terms. Moreover the contract is *poly-partite*, so to speak. It is not only a contract between the subscriber and the corporation, but it is, in a sense which creates an estoppel against the subscriber, a contract between him and each of the *other subscribers*. This estoppel also inures to the benefit of subscribers subsequently signing. After others have subscribed and become bound on the faith of his being bound as an absolute subscriber, he cannot be allowed to withdraw, for that would operate as a fraud upon them. Moreover, there is a party lying outside and beyond other subscribers, whose rights rise even above theirs, and whom the law is still more sedulous to protect,—the public, who give credit to the corporation on the faith of its subscribed capital stock. This subscribed capital stock is a *trust fund* for creditors, although remaining unpaid in the hands of the subscribers. *Shickle v. Watts*, 94 Mo. 410. Moreover, it is the common stake in which all the shareholders have acquired an interest. The corporation, considered as an artificial being, and the directors, considered as a tangible body, are the

trustees of this fund.   As such they have *no power* to release any part of it, but are bound to collect and administer it for the benefit of the beneficiaries in the trust.   This proposition of law enforces the conclusion, that, neither as against the corporation itself, nor as against its stockholders, nor as against its creditors, have the managers of the corporation any power to discharge one, who has become absolutely bound in form as a stockholder, from the obligation of his subscription, or to let down or reduce that obligation in any way. This principle has been in force in this state, and in every other American jurisdiction, with such uniformity, that no principle of American law is better established, or better understood by the lawyers who are called upon to discharge the duty of advising the promoters of corporations.

In conformity with this principle the courts have held with the greatest unanimity that, where the contract of subscription is absolute on its face, no extrinsic or collateral agreements between the subscriber and the promoters or agents of the corporation, who procure him to subscribe, not amounting to fraudulent representations on their part, can be shown in evidence for the purpose of discharging or reducing his liability as a stockholder.   *Mangles v. Dock Co.*, 10 Sim. 519 ; *Chouteau v. Dean*, 7 Mo. App. 210 ; *Haskell v. Sells*, 14 Mo. App. 91 ; *Pickering v. Templeton*, 2 Mo. App. 424 ; *Thompson v. Bank*, 19 Nev. 103 ; s. c., 3 Am. St. Rep. 797 ; *Railroad v. Eastman*, 34 N. H. 124, 140 ; *Cunningham v. Edgefield*, 2 Head ( Tenn.) 23 ; *Connecticut Ry. Co. v. Bailey*, 24 Vt. 465 ; *North Carolina Ry. Co. v. Leach*, 4 Jones L. ( N. C.) 340 ; *Mississippi, etc., Ry. Co. v. Cross*, 24 Ark. 443 ; *Evansville, etc., Ry. Co. v. Posey*, 12 Ind. 363 ; *Smith v. Railroad*, 30 Ala. 650 ; *Kennebec, etc., Ry. Co. v. Waters*, 34 Me. 369 ; *Minneapolis Threshing Machine Co. v. Davis*, 40 Minn. 110 ; *Baile v. Educational Society*, 47 Md. 117 ; *Robinson v. Railroad*, 32 Pa. St. 334 ; *Greenville, etc., Ry. Co. v.*

*Coleman*, 5 Rich. L. (S. C.) 118 ; *Thigpen v. Railroad*, 32 Miss. 347 ; *Marshall Foundry Co. v. Killian*, 99 N. C. 501 ; s. c., 6 Am. St. Rep. 539 ; *Morrow v. Iron & Steel Co.*, 87 Tenn. 262.; s. c., 10 Am. St. Rep. 658 ; *Scovill v. Thayer*, 105 U. S. 143 ; *Union Mutual Life Ins. Co. v. Mfg. Co.*, 97 Ill. 537 ; s. c., 37 Am. Rep. 129 ; *Jewell v. Paper Co.*, 101 Ill. 57.

Some of the cases are closely allied to the present. In *White Mountain Ry. Co. v. Eastman*, 34 N. H. 124, 140, an agreement was entered into at the time of the subscription, to the effect that the subscriber might be released as to a portion of his shares. It was held that, although, as between the parties, the two instruments, the contract of subscription and this collateral agreement, would be construed together and as a part of one contract, yet in favor of innocent persons, deceived by the fraud, the subscription would be held good and the agreement of release void. In *Baile v. Educational Society*, 47 Md. 117, the extrinsic agreement was that payment might be made in *land* instead of money, and it was held that it was void; and the same was held in *Noble v. Callender*, 20 Ohio St. 199 ; and in *Henry v. Railroad*, 17 Ohio, 187, as to payment in *goods*. In *Skrainka v. Allen*, 7 Mo. App. 434; s. c., 76 Mo. 384, the supreme court of this state held, affirming this court on the particular point, that an arrangement by which a corporation issues its shares to its original subscribers as a *bonus* to bonds of the corporation pretended to be sold to the stockholders, but in fact sold to third persons through the agency of the stockholders, for which bonus the stockholders in point of fact pay nothing to the corporation, is a fictitious and colorable payment of such stock, and, as such, no payment when challenged by the creditors of the corporation. The supreme court also held, affirming this court on the particular point, that, where a corporation issues its shares to its stockholders under an agreement or understanding between them and the corporation, that no more than forty per

cent. should be called in upon such stock, such agreement is void as to creditors of the corporation. And where, afterwards, the corporation does call in the remaining sixty per cent., but undertakes by way of *solatium* to issue to the stockholders, thus paying their subscriptions, mortgage bonds of the corporation, the stockholders, thus receiving said mortgage bonds, will be responsible to creditors of the corporation for *at least* the value which they may have realized from such bonds. Whether the stockholder thus receiving such bonds may not be held liable for their full face value, neither this court nor the supreme court deemed it necessary to decide, as the moving creditor did not insist upon the latter proposition. Although the court of appeals of New York, in a case arising upon a similar transaction, held otherwise ( *Christenson v. Eno*, 106 N. Y. 97 ), we must follow and apply the principle thus approved by our supreme court.

There is another principle, which is equally fatal to the defense which the defending stockholder attempts to set up in this case. His evidence is to the effect that he subscribed in an absolute form, though really as trustee for the Scott Investment Company, because that company had no power under the law to become a subscriber to the stock of another corporation. He is then in the position of one subscribing absolutely, but upon a secret trust for another. In such a case it is well settled that the trustee is bound absolutely and that the equities which subsist between him and his *cestui que trust* are matters with which neither the corporation, nor its other stockholders, nor its creditors have anything to do. *Crease v. Babcock,* 10 Met. 525 ; *In re Empire City Bank*, 18 N. Y. 199 ; *Pullman v. Upton*, 96 U. S. 328 ; *Holt's Case*, 1 Sim. N. S. 389 ; *Sichell's Case*, 3 Ch. App. Cas. 119.

For stronger reasons the result is the same where the beneficiary in the trust is incapable of holding the shares. The well-known rule in such case is, that a

person who subscribes to shares in a company in the name of a fictitious or irresponsible person must personally respond to the liability thereby assumed. *Cox's Case,* 4 De Gex, Jones & S. 53 ; *Pugh v. Sharman,* L. R. 13 Eq. 566. The rule is the same, even where the agency or trusteeship is expressed, so that one, who, professing to act as agent, executes a contract for a party incapable of contracting, binds himself personally. *Simmons v. Railroad,* 19 Mo. App. 542. In this case then, if the defending stockholder had put his name down on the face of the articles of association as trustee for the Scott Investment Company, as that company was incapable of subscribing, he would have bound himself personally.

We do not, of course, question the principle, that shares of stock may be paid for either in property or in services, such as the corporation may lawfully purchase. *Liebke v. Knapp,* 79 Mo. 22. But in this case, according to the form of the contract of subscription, which was put on record in the recorder's office in Greene county, which was submitted to the secretary of state, on the face of which he issued the certificate of incorporation, and which was held out to the public and to other intending subscribers, the shares were, as matter of law, payable absolutely in money, notwithstanding any unexpressed agreement between the subscriber and the promoters ; and fifty per cent. of that money was payable presently and absolutely by virtue of the statute without any assessment by the directors. *Joy v. Manion,* 28 Mo. App. 55.

Nor does it make any difference that the agreement between the defending stockholder and the promoters of the defendant company and the Scott Investment Company, whereby this subscription to the stock of the defendant company was to be paid for in the property to be conveyed by the Scott Investment Company, was not in fact carried out, but fell through by reason of the inability of the defendant corporation to perform

the contract on its part. That does not restore the assets of the defunct corporation, nor pay its debts, nor cure the wrong done to the public and to future subscribers by this secret arrangement. In this respect the case before us somewhat resembles the case of *Singer v. Given*, 61 Iowa, 93, where it was held that a subscriber to stock is liable to a creditor of the corporation to the amount of his unpaid subscription, although his subscription was to be paid in property, and although he had, by agreement with the corporation, surrendered all claim to the stock, and they had surrendered all claim to the property.

As to so much of the evidence as tends to make out the defense, that the agents of the Scott Investment Company, in pursuance of an agreement with the promoters of the defendant corporation, canvassed the city of Springfield and procured other solvent subscriptions to take the place of the subscriptions of the defending stockholder, which subscriptions were in fact substituted in the place of his, and his subscription canceled, it is to be observed, in the first place, that the evidence to establish this defense is very indefinite and unsatisfactory. With the exception of one of the subsequent subscribers, who was an officer in the Scott Investment Company, we see no evidence that any of them subscribed with the understanding, that he was subscribing merely to take the place of the defending stockholder, presumably a substantial citizen of Springfield, whose name had in fact gone on record as a subscriber to the extent of $5,000, and for the mere purpose of taking his place and releasing him from participating in the venture. The evidence would, on ordinary experience in these matters, lead to the contrary inference, that the subsequent subscribers, except the one who was an officer of the Scott Investment Company, may have given their subscriptions on the faith of two substantial citizens of Springfield, this defending stockholder and Mr. Atwood, being bound absolutely in the sum of $10,000 for the

success of the venture. It has been held that a sub-scriber to the shares of a corporation cannot be allowed to procure certificates of its shares, which have been purchased and paid for by another, and have them sub-stituted for his, and for the very plain reason that this diminishes the trust fund. *Marshall Foundry Co. v. Killian*, 99 N. C. 501 ; s. o., 6 Am. St. Rep. 539, 545. The mere fact, that the evidence of the defending stock-holder failed to show that *all* the subscribers subse-quently signing had knowledge of this arrangement and signed in view of it, is fatal to this defense; for these stockholders might, upon the facts shown, maintain a suit in equity to have the amount due on the subscrip-tion of the defending stockholder collected and applied to the payment of the debts of the company, as was decided by the supreme court of Illinois in *Melvin v. Ins. Co.*, 80 Ill. 446 ; s. o., 22 Am. Rep. 199.

But there is another consideration. It is element-ary law that the directors of a business corporation have no power to alter its constituent character. They have no power to change its articles of association after they have been recorded, or to discharge a subscriber therefrom and substitute another subscriber in his place. The articles of association, after being recorded, can only be changed by amendment in the mode pointed out by the statute. The directors of a corporation are its business managers merely, and in general they have no power over questions of membership. One, who has become a member in the mode pointed out by law, may transfer his membership to another by selling his shares in the ordinary way, and then the proper ministerial officer of the corporation records the transfer on the books of the company. Beyond this, neither the directors nor any other officers of the corporation have any power over its membership. If the directors can-not exercise such a power, the promoters cannot, by a private arrangement with third parties before the

corporation is organized, contract for its exercise in advance, so as to bind the corporation and the public.

The decision in *Erskine v. Peck*, 13 Mo. App. 280 (affirmed on the opinion of this court by the supreme court in 83 Mo. 465), that, where a shareholder surrenders to a corporation certificates of stock which have been issued to him as "full paid," but for which he has paid nothing, and the certificates are reissued to *bona fide* subscribers, the first shareholder is not liable to creditors of the corporation, who become such *long subsequently*, does not seem to control this case. It does not appear that the name of the subscriber, thus allowed to surrender his shares, went into the recorded articles of association as a subscriber and corporator, or that others subsequently subscribed to the shares. But it does appear that there was a controversy between him and the company, and that the surrender was made in good faith in compromise of it, and that the same shares were subsequently reissued and presumably paid for by the new purchasers. There was, therefore, no diminution of the trust fund, nor were there any of the elements of estoppel which enter into this case.

Nor does the decision in *Johnson v. Lullman*, 15 Mo. App. 55 (affirmed by the supreme court on the opinion of this court in 88 Mo. 567), uphold the defense of the present stockholder. There it was *said*, on the authority of *Erskine v. Peck, supra*, that a stockholder who surrenders his stock to the corporation is exonerated, although the stock in that case does not seem to have been, as in *Erskine v. Peck*, reissued to other solvent subscribers. But that observation was not necessary to the decision of the case. The real proposition on which the case turned was, that Miller, testator of the defendant Lullman, had purchased the stock in good faith, not knowing that it was unpaid, which was a good defense. *Keystone Bridge Co. v. McCluney*, 8 Mo. App. 496; *Foreman v. Bigelow*, 4 Cliff. 508. The

proposition, that a stockholder can merely surrender his shares and thereby escape liability to subsequent creditors, is opposed to all authority. There is an entire *want of power* on the part of the directors of a corporation to consent to such a surrender, because it is tantamount to giving away thé assets of the corporation. I am surprised on looking at the report to find myself assenting to the language of that opinion on the point named, and still more surprised to find the supreme court affirming it as written.

In *Haskell v. Sells*, 14 Mo. App. 92, the subscriber withdrew in pursuance of an option allowed him by the promoters, and his name never went into the articles of association, as did the name of the defending stockholder in this case; and yet the court, after considering the question on a reargument, held him liable as a stockholder, and of course to subsequent creditors; for there could have been no others.

The fact that no certificate was ever issued to the defending stockholder is immaterial. *Schaeffer v. Ins. Co.*, 46 Mo. 248; *Haskell v. Sells*, 14 Mo. App. 91.

The judgment will be affirmed. All the judges concur.