KEYSTONE BRIDGE COMPANY, Respondent, *v.* JOHN H. McCLUNEY, Appellant.

March 30, 1880.

1. An innocent purchaser of stock, taken in good faith as paid up, in the absence of anything to put him upon inquiry, and where the books of the corporation would give no notice that the stock was not paid up, is not liable to the creditors of the corporation for the amount unpaid.

2. In order that shares of stock in the usual form should be regarded as paid up, in the hands of an innocent purchaser, it is not necessary that they should express upon their face that they are fully paid.

APPEAL from the St. Louis Circuit Court.

*Reversed and remanded.*

GLOVER & SHEPLEY, for the appellant: The transferee of the shares of stock is not liable for unpaid subscriptions on the shares purchased by him, unless he has, agreed to pay them either expressly or by implication. — *Webster* v. *Upton*, 91 U. S. 65; *Sanger* v. *Upton*, 81 U. S. 56; *Seymour* v. *Sturgis*, 26 N. Y. 134; *Williams' Case*, L. R. 1 Ch. Div. 576; *Shackelford's Case*, L. R. 1 Ch. Div. 567; *Mallorie's Case*, L. R. 2 Ch. 181; *Foreman* v. *Bigelow*, 7 Cent. L. J. 430; *Burkinshaw* v. *Nicholls*, 3 H. L. Cas. 1004.

J. H. WIETING, with whom are I. C. TERRY, and BROADHEAD, SLAYBACK & HAEUSSLER, for the respondent: The person appearing on the books of the corporation as the owner of stock is liable to a creditor of the corporation for the amount unpaid thereon. — *McClaren* v. *Franciscus*, 43 Mo. 452; *White* v. *Salisbury*, 33 Mo. 150; *Fine* v. *Hornsby*, 2 Mo. App. 61; *A. Wight Co.* v. *Steinkemeyer*, 6 Mo. App. 575.

BAKEWELL, J., delivered the opinion of the court.

This is a proceeding, under the statute, by an execution creditor of the Illinois and St. Louis Bridge Company against McCluney as holder of one hundred and forty shares of stock of the Bridge Company on which fifty, per cent is not paid up. The judgment against the company is for $46,831, and was rendered in January, 1878. Notice of the application to the Circuit Court for execution against McCluney, on the ground that he was a stockholder on the return-day of the execution, was served in the following May. The facts under which the creditors of the company hold the stockholders liable are fully set forth in *Skrainka* v. *Allen*, 7 Mo. App. 434. Under our ruling in that case,

and in the case of *Keystone Bridge Company* v. *Barstow*, submitted with the case at bar, it results from the facts in evidence in the present case that of the one hundred and forty shares of stock in the Bridge Company standing in the name of McCluney on the books of the company there was unpaid twenty-five per cent, being the par value of the second-mortgage bonds received by the former owner of the stock on paying his subscription. Besides this, as to $12\frac{8}{11}$ of these one hundred and forty shares, $40 a share was unpaid ; because these particular shares were a portion of eleven hundred shares owned originally by McPherson, who received one hundred shares of the whole number as bonus shares from the company. All the bonus stock was unpaid as to forty per cent. But the bonus shares were so mingled with the others that it is impossible to say of any particular share whether or not it is bonus. It was therefore assumed that each certificate included a percentage of bonus stock. It is unnecessary to repeat the statement made in *Skrainka* v. *Allen*. Reference is made to the opinion in that case for the facts on which it is held that this stock is unpaid stock to the extent stated above. The eleven hundred shares owned by McPherson passed by his will to his executors and trustees, Shepley and Parsons. One Wuerpel, the managing officer of a bank (both the bank and Wuerpel being then of good reputation in the business world), wished to purchase of the McPherson estate two hundred of these shares. In order to effectuate that sale, the trustees of the estate surrendered their two certificates for one thousand shares and one hundred shares, and received in exchange from the company eleven certificates for one hundred shares each. Wuerpel purchased two of these certificates on October 12, 1874, at $34 a share. He wanted to pay by a draft on London ; but Parsons and Wuerpel could not agree as to the terms on which the draft should be discounted. To facilitate matters in regard to the draft, Wuerpel desired that the two certificates should be divided into twenty certificates of ten shares each. The

certificates were therefore, by Parsons and Shepley, assigned to McCluney, who was an employee of Wuerpel's bank. McCluney thereupon surrendered these certificates to the Bridge Company, and took in exchange twenty certificates of ten shares each. Those shares were assigned by Mc-Cluney to Wuerpel, and attached to the draft on London. The shares have ever since stood on the books of the company in McCluney's name.

The question presented in this case is whether, in favor of a judgment creditor of the company, these shares are to be held as partially unpaid as against McCluney, who confessedly had no actual notice that they were not fully paid up shares. That they should be treated as unpaid as to the bonus stock and as to the amount received for the second-mortgage bonds whilst they remained in the hands of the original holder and party to the transaction, is already decided by this court in the cases mentioned above. The Circuit Court, in the case at bar, held that the position of McCluney was no better than that of the original holder. This, no doubt, is contrary to the English cases. In regard to that, however, it is to be remarked, as we have already said (*Fisher* v. *Seligman*, 7 Mo. App. 391), that the doctrine of Judge Story, that stock of a corporation is a trust fund for the payment of creditors, though the accepted American doctrine, does not seem to be recognized in England; and that the theory of the English "Winding-up Acts," under which the English cases proceed, is essentially different from that of our statute, and of the various statutes in other States, giving to the creditor of the corporation a remedy against the stockholder. In England, the creditor can claim to be paid only out of the assets of the company, which the company itself has a right to bring into its assets; and the creditor collects through the company by virtue of the rights of the company, and, generally, he is in no better position than the company. But in America, generally, the creditor may enforce a claim against a stockholder which

the company itself could not assert, and reach with equal facility the stockholder by contract and the stockholder by estoppel. With us there is a contract on the part of the stockholder, not with the company only, but with the creditors of the company; and cases may arise in which the company would be estopped to set up a contract with the stockholder, but in which the stockholder, as against a creditor of the corporation, would be estopped to deny that the contract existed. In England the rights of the creditor can only be enforced through the official liquidator, in the right of the company, and it is held that the courts will not make a contract for the shareholders, for the benefit of creditors, which the shareholders have not themselves made.

But neither in America nor in England can a shareholder be held liable to a creditor of the corporation unless his liability arises either *ex contractu* or *ex delicto*, either by virtue of contract or of some misconduct or carelessness on his part by which another has been deceived to his hurt, so that the stockholder is estopped to say that in truth there was no contract. Unless McCluney, in the present case, was bound to inquire whether these shares were actually paid up, it is impossible to hold him liable. There is no dispute that he acted in good faith, that he believed the stock to be paid up, and that, as between the company and the original stockholder, it really was paid up. We do not know on what principle it is to be said that the person purchasing stock must suspect fraud. But, waiving that, what inquiry was McCluney to institute in this case, and from whom was he to seek information? We do not think he was bound to go beyond the company, and the company claimed that the stock was paid, and the books of the company would have shown him that the stock was fully paid.

We know of only one American case directly in point. *Foreman* v. *Bigelow*, 7 Cent. L. J. 430. The case was before Mr. Justice Clifford and Judge Lowell, district judge of the Eastern District of Massachusetts. The shares in that

case were taken in good faith, in open market, as paid-up shares, for value. They had been issued to the original holder for mineral lands, at far less than their real value. The original issue was fraudulent; but the court held that innocent purchasers of shares are not liable to creditors in such a case, and that the only remedy is against the parties to the fraud. Mr. Shepley, of counsel for appellant here, stated, on the argument before us, that he had been at pains to ascertain the form of certificate before the court in *Foreman* v. *Bigelow*, and that it was in the usual form, and in the form in the case at bar, nothing being said on the certificate itself as to the stock being paid up. It is believed that a share of stock in the ordinary form is to be taken to be paid up in the absence of anything appearing to the contrary, and that it can make no difference whether the certificate says on its face that the stock is fully paid or says nothing about it. We think that, where the stock is taken in good faith as paid up, in the absence of anything which should have put the purchaser on his guard, and in a case where the books of the company would have given no notice that the stock was not paid, the purchaser in good faith ought not to be held liable to the creditors of the company. This is the view taken in the well-considered case just cited. We know of no contrary ruling, and it is accepted as the correct doctrine by the learned author of the recently issued treatise on Stockholders. Thomp. on Stock., sect. 135. And it does seem that any other rule would not only impose upon the stockholder a duty of examination where he has no means of getting accurate information, but, as was urged before the House of Lords in *Burkinshaw* v. *Nicholls*, 3 App. Cas., H. L., 1004, and as is said by Lord Chancellor Cairns, delivering the opinion in that case, would tend to discredit and depreciate all stocks and deal a serious blow at the business of manufacturing and mercantile companies.

We think, therefore, that this case should be reversed and the cause remanded, and it is so ordered. Judge HAYDEN concurs ; Judge LEWIS is absent.