## J. B. JOHNSON, ASSIGNEE, Appellant, *v.* J. C. LULLMAN, ADMINISTRATOR, Respondent.

### January 29, 1884.

1. PRACTICE — PRESUMPTIONS. — The cause having been tried by the court without a jury, and no declarations of law having been asked or given, it will be presumed, on appeal, that the court entertained correct views of the law, and, if there is substantial evidence to support the judgment, it will be affirmed.

2. CORPORATIONS — STOCK — PRESUMPTIONS. — The presumption is that a certificate of stock in the usual form is full paid, and a purchaser who takes it without notice is not liable to creditors if the company's representations that the stock is full paid are false.

3. —— LIABILITY OF STOCKHOLDERS — SURRENDER OF STOCK. — A stockholder who surrenders unpaid stock to the corporation is not liable thereon to a creditor of the corporation whose demand accrued after the surrender.

APPEAL from the St. Louis Circuit Court, HORNER, J. *Affirmed.*

C. H. KRUM and SMITH & HARRISON, for the appellant: Stockholders " can not occupy the *status* of innocent purchasers, but are privies to the trust and take the stock *cum onere.*"— Thompson on Stockholders, sects. 10, 11, 13; *Wood* v. *Dummer*, 3 Mason, 313; *Adler* v. *Milwaukee Brick Co.*, 13 Wis. 62. Shares of stock are personal property, and may be transferred like other property, unless the transfer is restrained by the character of the articles of association, and a *bona fide* transfer terminates the liability of the transferer either to the company or to the creditors. — Thompson on Stockholders, sect. 210; citing *Chouteau Spring* v. *Harris*, 20 Mo. 382; *Bank* v. *magill*, 5 Conn. 28; *McLaren* v. *Franciscus*, 43 Mo. 450; *Miller* v. *Republic Ins. Co.*, 50 Mo. 55; *Johnson* v. *Underhill*, 52 N. Y. 203. " Creditors of a corporation are entitled to the whole capital for the payment of debts due them. This they can not have if the transferee of the

shares is not responsible for whatever remains unpaid upon his shares."—*Pullman* v. *Upton*, 96 U. S. 328, 330 ; Morawetz on Corp., sects. 320, 271. And see also *Webster* v. *Upton*, 91 U. S. 65 ; *Moore* v. *Jones*, 3 Woods, 53.

TAYLOR & POLLARD, for the respondent: If the stock was either wholly paid up, or if it was put on the market as such, he who innocently purchases it as such will not be liable to the creditors of such corporation. — Thompson Liability of Stockholders, sect. 135 ; *Waterhouse* v. *Jameson*, L. R. 2 H. L. 29 ; *McCracken* v. *McIntire*, 1 Duv. 479 ; *Keystone Bridge Co.* v. *McCluney*, 8 Mo. App. 501 ; *Erskine* v. *Lowenstein*, 11 Mo. App. 595. The surrender of stock to the corporation terminates the relation of the holder to the corporation as a stockholder. — *McLaren* v. *Franciscus*, 43 Mo. 452 ; *Mills* v. *Stewart*, 41 N. Y. 384.

LEWIS, P. J., delivered the opinion of the court.

The plaintiff is owner of an unsatisfied judgment, rendered February 10, 1876, in favor of the Patrick Bros. Lumber Company, against the Gravois Railroad Company, for $4,285.95. The petition charges that the last mentioned corporation has become dissolved, and prays judgment against the defendant administrator, on the ground that his intestate, George C. Miller, deceased, was, in his lifetime, the holder of unpaid stock in the debtor corporation to the amount of $5,000. The court, sitting as a jury, found for the defendant. No instructions were asked for, or given. The legal presumption follows, that the court entertained correct views of the law, and if there was testimony tending substantially to sustain the finding, the judgment must be affirmed.

It appears that the Gravois Railroad Company was chartered in 1859, with an authorized capital stock of six thousand shares, at $50 per share. No business steps had been taken, however, up to May, 1873, when five persons, of whom James Edwards was one, " purchased the franchise "

of the original incorporators. These persons erroneously supposed that their purchase made them individual owners of all the capital stock, and that they might parcel it out among themselves, receiving and disposing of the .certificates, as of paid-up stock, for their own personal profit. Acting, according to his testimony, upon this view, Edwards induced Miller to purchase from him one hundred shares, together with certain bonds, for which Miller paid to Edwards $5,000. This sum was never turned over to the corporation, but was appropriated by Edwards as his own money, in accordance with the understanding above mentioned. Edwards was a director at the time, and caused a certificate to be issued to Miller, as owner of the one hundred shares, on the face of which paper nothing appeared to indicate that the stock was not fully paid for. In the brief of appellant's counsel, it is said that the company held Miller " charged upon its books for the stock as unpaid." If there was any testimony to that effect at the trial, it does not appear in the record before us. The only book entries preserved are taken from the stock ledger, and show nothing more than the name of the holder, number of shares, par value, etc., with no reference to either debits or credits, as far as can be perceived.

We can find nothing in the facts proved which should have imparted notice to Miller that his stock was not paid up, or even have put him upon inquiry. If any presumption of fact arises from the face of a stock certificate in customary form, as was the one in this case, it is, that the stock certified to belongs to the holder ; is his without incumbrance — in other words, is fully paid for. *Keystone Bridge Co.* v. *McCluney*, 8 Mo. App. 501. In addition to this consideration, Miller was dealing with a director of the corporation, upon whose instigation the certificate was duly sealed with the corporate seal, and signed by the president and secretary, whose authority in the premises it would have been unreasonable to question. This director testifies

that he was, at the time, a " financial agent " of the corporation. Why should Miller have doubted that, upon paying his money to the director and financial agent, the certificate given him would be a perpetual voucher that he had discharged all his liability to the corporation on account of the shares acquired by him? He seems to have been literally within the rule, as stated in Thompson on Stockholders (sect. 135) : " It follows that, where a corporation issues shares as paid up, treats them as cash, and as such puts them on the market, a person who innocently purchases them under the belief that they are paid up, will not become chargeable with a liability to the creditor of the corporation, in case these representations of the company should turn out to be false. Such a person is not required to suspect fraud, or to institute inquiries, where all seems fair and comformable to the requirements of the law." *Foreman* v. *Bigelow*, 7 Cent. L. J. 430 ; *Keystone B. Co.* v. *McCluney*, 8 Mo. App. 501. We think that, in this case, there was at least substantial testimony from which the court might find facts sufficient to bring the defendant's intestate fully within the exemption recognized by these authorities. But, however this may be, there is another point which is conclusive against any disturbance of the judgment rendered in the court below.

There was testimony to the effect that Miller surrendered his stock to the company on April 18, 1874. The judgment held by the plaintiff against the Gravois Railroad Company was founded upon several promissory notes, whereof the earliest in date was executed on March 21, 1875. Others were dated in April or May, of the same year. In *Erskine* v. *Peck* (13 Mo. App. 280), this court held that, where a stockholder, who has not paid anything for his stock, surrenders it to the corporation, he can not be held liable to a creditor of the corporation, whose claim first accrues after such surrender. It is true that, in this case, a memorandum copied from the stock ledger seems to indicate that

the surrender was made in April, 1875. But a witness, with the original stock certificate in his hand, reads from it an indorsement showing that it was surrendered and cancelled in 1874. Other facts and dates incline to corroborate the last as the true account. There is, however, in any view of this testimony, a disagreement about the date, and we must apply the rule generally observed, where no instructions are given or refused, which presumes that the court, correctly applying the law, found as to the fact in dispute, for the side whereon the finding would sustain the judgment.

No error being apparent in the record, the judgment is affirmed, with the concurrence of Judge THOMPSON; Judge BAKEWELL not sitting.